# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4996 | **DATE** | October 28, 2002 |
| **CASE TITLE** | *Oxford Commercial Fundings, LLC v. Cargil Inc.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth herein, Defendant Cargill's Motion for Summary Judgment [64-1] is GRANTED as to Counts I and II and DENIED as to Counts III and IV, while Plaintiff Oxford's Motion for Summary Judgment [70-1] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 31 2002 | |
| | Notified counsel by telephone. | | date docketed | 74 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OXFORD COMMERCIAL FUNDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARGILL, INC., | ) | Hon. Blanche M. Manning |
| | ) | |
| Defendant/Third Party Plaintiff, | ) | Case No. 00 C 4996 |
| | ) | |
| v. | ) | |
| | ) | DOCKETED |
| WAGNER BROS. ENTERPRISES, INC. | ) | OCT 3 1 2002 |
| | ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM AND ORDER

This action stems from a contract ("the Contract") between Defendant/Third Party Plaintiff Cargill, Inc. ("Cargill") and Third Party Defendant Wagner Brothers Enterprises, Inc. ("Wagner") in which Wagner agreed to provide trucking services to Cargill and a Master Factoring Agreement ("MFA") entered into by Wagner and Plaintiff Oxford Commercial Funding, LLC ("Oxford"), whereby Oxford purchased Wagner's accounts receivables (including payments due from Cargill). Oxford alleges that after receiving proper notice of the assignment of Wagner's receivables, Cargill nevertheless continued to send payments to Wagner instead of Oxford. Oxford subsequently brought the instant diversity action seeking to recover the money which Cargill paid to Wagner.

The instant matter comes before the Court on Oxford's and Cargill's cross motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Cargill's Motion for Summary Judgment is GRANTED as to Counts I and II and DENIED as to

74

Counts III and IV, while Oxford's Motion for Summary Judgment is DENIED.

## BACKGROUND[1]

This action stems from an assignment by Wagner to Oxford of its accounts receivables under the Contract with Cargill. Cargill, an Iowa corporation, entered into the Contract with Wagner, an Ohio corporation, in which Wagner agreed to provide trucking services to Cargill. The Contract contained a term relating to notices under the Contract ("the Notice Provision"), which provided that notices given pursuant to this Contract shall be by certified mail and sent to "Cargill, Incorporated, Attn: Dave Bryden, 24950 Country Club Boulevard, Suite 450, North Olmsted, OH 44070."

After entering into the Contract, Wagner entered into the MFA with Oxford, whereby Oxford purchased Wagner's accounts receivables (including payments due from Cargill). About a month after the execution of the MFA, on November 5, 1999, Oxford sent Cargill a notice of the assignment which was signed by both Oxford and Wagner and directed Cargill to make all future payments to Oxford. This notice, however, was not sent to the address in the Notice Provision but was sent by regular mail to "Cargill Salt, 4340 18th Ave. S.W., Fargo, N.D. 58103, Attn. Accounts Payable Supervisor." As a result of the alleged improper notice, Cargill contends that it was unaware of the assignment and therefore continued to pay Wager as required under the Contract. Not until February of 2000, when Cargill received a letter from Wagner at the address in the Notice Provision, notifying it of the assignment, did Cargill begin forwarding payments to

---

[1] The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts that the parties provided in their Local Rule 56.1 statement that the other side did not controvert are deemed admitted for purposes of this motion. Schultz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992).

2

Oxford.

After Oxford was unable to obtain the payments, which it alleges were incorrectly sent to Wagner, Oxford brought the instant action seeking damages under four theories: (1) section 9-318(3) of the Uniform Commercial Code ("UCC") (Count I); (2) payment on the MFA (Count II); (3) aiding and abetting Wagner's conversion of the payments which Oxford was entitled to under the MFA (Count III); and (4) intentional interference with Oxford's contractual rights under the MFA (Count IV). After conducting discovery, the parties have now brought the instant cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A genuine issue of material fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must construe the alleged facts in a light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); Dale v. Chicago Tribune Co., 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a

3

genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tennenbaum Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and may not merely rest upon the allegations or denials in its pleading, but instead must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. Id. at 250-51 (citations omitted). The court considers the record as a whole, and draws all reasonable inferences in the light most favorable to the nonmoving party. Regner v. City of Chicago, 789 F.2d 534, 536 (7th Cir. 1986).

## ANALYSIS

Whether summary judgment is appropriate hinges on whether: (I) Oxford gave proper notice of the assignment to Cargill; (II) Oxford waived its right to receive payments from Cargill after it failed to take action after receiving notice of the assignment; and (III) Cargill is entitled to a "setoff" of the accounts receivables it now owes to Oxford for damages it incurred as a result of conduct by Wagner. The Court will discuss each of these issues in turn.[2]

### I. Notice of the Assignment

To determine whether Oxford gave proper notice of the assignment to Cargill, the Court will examine whether: (A) Oxford was bound by the Notice Provision in the Contract; (B) Cargill was required to plead lack of notice as an affirmative defense; and (C) Oxford gave

---

[2] The Contract contained a choice of law provision providing for the application of Minnesota law. Because Minnesota courts look to other jurisdictions for guidance when interpreting the UCC, Bay Area Factor v. Target, 987 F. Supp. 734, 736 (D. Minn. 1997), this Court will examine case law from other jurisdictions.

4

proper notice of the assignment.

### A. Transfer of the Underlying Contractual Terms in an Assignment of Accounts Receivables

Oxford contends that it was not bound by the Notice Provision because: (1) the MFA only transferred Wagner's right to the payments and not the terms of the Contract; and (2) Oxford is not suing under the Contract. Cargill, in turn, contends that, under section 9-318(1) of the UCC, Oxford was required to comply with the Notice Provision, and that its failure to do so bars all of its claims.

Section 9-318(1) provides that:

[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9-206 the rights of an assignee are subject to

(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.[3]

Courts interpreting section 9-318(1) have held that because "the essence of the assignment is an assignment of the rights under a contract without a delegation of the performance obligation, the account debtor may defend against his own obligation to pay based on any defensive posture available to him were the assignor seeking payment." H. John Homan Co. v. Wilkes-Barre Iron and Wire Works, Inc., 558 A.2d 42, 44 (N.J. App. Ct. 1989). See also 4447 Associates v. First Security Financial, 889 P.2d 467, 472 (Utah Ct. App. 1995) (assignment of interest in an asset purchase agreement "was subject to the terms of the original contract between" the account

---

[3] Article 9 was revised in 2000 and section 9-318 has now been renumbered 9-404. The corresponding Minnesota Statute is section 336.9-404.

5

debtor and assignor); 4 White & Summers, Uniform Commercial Code § 34-6 (5th ed.) ("the assignee [] creditor stands in the shoes of the assignor").

Here, Oxford contends that it was not bound by the Notice Provision because it was only assigned the right to receive payments under the Contract and not the contractual obligations. This contention, however, is contrary to the plain language of section 9-318(1) and courts' interpretation of this section. In cases addressing the assignment of accounts receivables, courts have held that the assignee "stands in the shoes of the assignor" and is "subject to contract defenses or claims of the account debtor arising by virtue of the terms of the contract out of which the receivable was created." James Talcott, Inc. v. H. Corenzwit and Co., 387 A.2d 350, 353 (N.J. 1978). See also First Nat'l Bank of Louisville v. Master Auto Serv. Corp., 693 F.2d 308, 309 (4th Cir. 1982) (assignee takes "the assignment subject to all legal and equitable defenses [the account debtor] could have asserted against [the assignor]"); GMAC COMMERCIAL Credit LLC v. Springs Indus., Inc., 171 F. Supp. 2d 209, 214 (S.D.N.Y. 2001) (an "assignee suing on an assigned contract is bound by that contract's arbitration clause"); West Des Moines State Bank v. Brinswick Corp., 483 N.W.2d 338, 343 (Iowa 1992) ("[a]n assignee takes its interest subject to defenses . . . of the account debtor against the assignor"). Consequently, this Court finds that, regardless of the fact that Oxford was only assigned the right to the payments under the Contract, Cargill may properly assert the Notice Provision as a defense under section 9-318(1) because it is a term of the Contract out of which Wagner's accounts receivables were created.

In addition, Oxford contends that it was not bound by the Notice Provision because Oxford is not suing to enforce the terms of the Contract. Instead, according to Oxford, its claims

are based upon the MFA and the payments which Cargill wrongfully paid to Wagner. Although Oxford fails to cite any authority for this proposition, it does appear that section 9-318(1) does not apply when the assignee's action is not based on the underlying contract between the assignor and the account debtor. See Untied States v. Handy and Harman, 750 F.2d 777, 786 (9th Cir. 1984) ("[s]ection 9-318 does not apply when the suit is for repossession or conversion since the basis for a conversion suit" is "not the assignment of the account held by the [account] debtor"); Farmers Acceptance Corp. v. DeLozier, 496 P.2d 1016, 1018 (Col. 1972) ("[t]he assignee is also subject to all the equities and defenses which could have been raised by the debtor against the assignor, with the exception of those claims and defenses which are both unrelated to the underlying contract and arise after the debtor is notified of the assignment"). Consequently, the Court will examine Oxford's claims for relief to determine whether Cargill may assert the Notice Provision as a defense.

Oxford's Complaint seeks damages under four theories: (1) section 9-318(3) of the UCC (Count I); (2) payment on the MFA (Count II); (3) aiding and abetting Wagner's conversion of the payments which Oxford was entitled to under the MFA(Count III); and (4) intentional interference with Oxford's contractual rights under the MFA, e.g., causing Wagner to breach the MFA (Count IV).

After examining the Complaint, this Court finds that Counts I and II seek payments which Oxford is allegedly due under the MFA. The payments due under the MFA, however, arose out of the Contract. Thus, Cargill may assert the Notice Provision as a defense to Counts I and II.

In contrast, Counts III and IV seek damages for torts which Cargill allegedly committed which deprived Oxford of the money it was due under the MFA. While the payments under the

7

MFA arose out of the Contract, the claims for conversion and intentional interference with Oxford's contractual relationship with Wagner are not based on the Contract. Instead, these claims are premised on Cargill's alleged interference with Oxford's rights under the MFA. Therefore, this Court finds that the Notice Provision is not a defense to Counts III and IV.

Accordingly, the Court finds that Cargill may assert the Notice Provision as a defense as to Counts I and II but not to Counts III and IV.

**B.     Pleading Lack of Notice as an Affirmative Defense**

Oxford additionally contends that Cargill may not assert lack of notice as a defense because Cargill failed to plead lack of notice as an affirmative defense. Federal Rule of Civil Procedure 8(c) requires that: "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . waiver . . . and any other matter constituting an avoidance or affirmative defense." Courts interpreting Rule 8(c) hold that notice need not be affirmatively pled if notice is a "condition precedent to the [plaintiff's] cause of action which must be pleaded and proved by the [plaintiff] in order to recover." See Hayes v. General Elec. Co., 151 F. Supp. 2d 1001, 1010 (N.D. Ill. 2001).

Here, each of Oxford's four counts allege that Cargill had notice of Wagner's assignment of Cargill's accounts receivable to Oxford. For example, Count I alleges that Cargill was required to pay money due to Wagner under the Contract to Oxford under section 9-318(3), which states that "[t]he account debtor is authorized to pay the assignor until the account debtor receives notice that the account due . . . has been assigned." Similarly, Count II alleges that as a result of "the November 5, 1999 Notice, Oxford was the owner of and entitled to payment of the Receivables." Likewise, Count III alleges that "[a]s a result of receiving the November 5, 1999

8

Notice, Cargill knew that Wagner had assigned its accounts receivable to Oxford." Finally, Count IV alleges that "[a]s a result of receiving the November 5, 1999 Notice, Cargill knew or should have known that Oxford and Wagner had [an] existing, valid and enforceable contract." This Court thus finds that notice is a condition precedent to Oxford's claims and has been pled by Oxford in its Complaint. Accordingly, this Court finds that Rule 8(c) does not preclude Cargill from raising improper notice as a defense.

### C. Notice of Assignment

Because this Court finds that Cargill may assert the Notice Provision as a defense to Counts I and II, the Court will next discuss whether Oxford gave proper notice of the assignment to Cargill. Not surprisingly, the parties disagree on whether this Court should determine notice under the Contract or the UCC.

Oxford contends that the UCC's notice requirements preempt the Notice Provision. This contention is without merit. The drafters of the UCC intended it to only apply as a default mechanism, and therefore, the parties to an agreement may contract around the provision of the UCC. United States v. American Nat'l Bank, 1989 WL 58279, at *4 (N.D. Ill. May 31, 1989); UCC 1-102(3). Additionally, Oxford's reliance on Bay Area Factors v. Target Stores, Inc., 987 F. Supp. 734 (D. Minn. 1997) is misplaced. While it is true that the court in Bay Area applied the UCC to determine whether the assignor gave the account debtor proper notice of the assignment, the underlying contract did not contain a notice provision as in the instant case. Id. at 736-37. Moreover, Oxford has not cited and this Court has not found any cases where the UCC notice provisions preempted a contractual notice requirement. Thus, because the notice provisions of the UCC do not preempt the Notice Provision in the Contract, the Court will look to the Contract

to determine whether Oxford gave Cargill proper notice of the assignment.

Here, the Notice Provision provides that:

Notices given pursuant to this Contract shall be by certified mail, deposited in U.S. mails, postage prepaid, and shall become effective upon receipt thereof. Except as otherwise provided in this Contract, notice shall be sent to the following address:

> If to Shipper: Cargill, Incorporated
> Attn: Dave Bryden
> 24950 Country Club Boulevard
> Suite 450
> North Olmsted, OH 44070

(Contract at ¶ 17B.) The parties do not contest the fact that Oxford did not follow this provision. Instead, about a month after the execution of the MFA, on November 5, 1999, Oxford sent Cargill a notice of the assignment which was signed by both Oxford and Wagner and directed Cargill to make all future payments to Oxford. This notice, however, was not sent to the above address but was sent by regular mail to "Cargill Salt, 4340 18th Ave. S.W., Fargo, N.D. 58103, Attn. Accounts Payable Supervisor." As a result, Cargill contends that it continued to pay Wagner as required under the Contract. Not until February of 2000, when Cargill received a letter from Wagner at the above address, notifying it of the assignment, did Cargill begin forwarding payments to Oxford.

Unfortunately for Oxford, cases interpreting contractual notice provisions have strictly construed these provisions to require exact compliance with their mailing instructions. For example, in Thakral v. Mattran, 509 N.E.2d 772, 773-76 (Ill. App. Ct. 1987), the court strictly construed a provision in a real estate contract requiring the purchaser to give "written notice" via "certified or registered mail" by a specified date to the seller if the purchaser was unable to obtain a mortgage commitment. Holding that the purchaser did not give adequate notice under the

10

contract because it gave notice one day after the date specified in the contract, the court held that "[w]here the terms of a contract are clear and unambiguous, they will be given their natural and ordinary meanings." Id. at 775.

Similarly, in Prudential Carolinas Realty v. Cambridge Development Corp., 872 F. Supp. 256, 257 (D.S.C. 1994), a contract for the sale of real estate required that:

> [a]ny notice or election required or permitted to be given or served by any party hereto upon any other party shall be deemed given or served in accordance with the provisions of this Contract when delivered or mailed as follows: notices shall be personally delivered or mailed in a sealed wrapper by United States registered or certified mail, return receipt requested, postage prepaid or delivered to a courier who guarantees overnight delivery, properly addressed as follows:
>
> In the case of notices directed to Seller:
> Cooper River Federal Savings Association
> 2170 Ashley Phosphate Road
> North Charleston, S.C. 29418
> Attention: Mr. J. Robert Greene
>            Managing Agent

Id. at 261. The purchaser, however, sent notice to another person at another address. Id. Rejecting the purchaser's contention that the seller had actual notice because its agent personally informed the seller at a meeting, the court held that the contract was "clear and unambiguous," and therefore, the purchaser failed to give adequate notice under the contract. Id. at 261-62.

Here, similar to Prudential and Thakral, this Court finds that the Notice Provision is clear and unambiguous, and therefore, because it is uncontested that Oxford did not follow this provision, the Court holds that Oxford did not give proper notice of the assignment by sending the November 5, 1999 letter. Accordingly, this Court GRANTS Cargill's motion for summary judgment as to Counts I and II.

Cargill also contends that summary judgment is appropriate as to Counts III (conversion)

11

and IV (interference with a contractual relationship). These claims, as set forth above, hinge on whether the November 5, 1999 letter actually gave Cargill notice of the assignment. While it is undisputed that the November 5, 1999 letter was sent to the improper address, there is a question of fact as to whether the letter was actually passed along to Cargill employees whose responsibilities included the sending of payments for the Wagner accounts payables. Therefore, this Court DENIES summary judgment as to Counts III and IV because there is a question of fact as to whether Cargill received actual notice of the assignment.

**II.   Waiver**

Cargill further contends that Oxford waived its right to receive payments from Cargill when it failed to take action after receiving notice of the assignment. In response, Oxford asserts that Cargill may not assert waiver as a defense because Cargill failed to plead waiver as an affirmative defense. As discussed above, Federal Rule of Civil Procedure 8(c) requires that a party plead waiver as an affirmative defense, unless the facts constituting waiver are a condition precedent to the plaintiff's claim.

Here, after examining the Answer and the Complaint, this Court finds that Cargill has not pled waiver as an affirmative defense and that the facts constituting waiver are not a condition precedent to Oxford's claims. Therefore, this Court holds that, pursuant to Rule 8(c), Cargill may not assert waiver as a defense.

**III.   Setoff**

Cargill further contends that it is entitled to a "setoff" of any of the accounts receivables that this Court finds it owes to Oxford for damages Cargill incurred as a result of conduct by Wagner. Unfortunately for Cargill, as with waiver, setoff is an affirmative defense which must

be affirmatively pled under Rule 8(c). <u>Beloit Corp. v. C3 Datatec, Inc.</u>, 78 F.3d 586, 1996 WL 102436, at *2 (7th Cir. March 1, 1996). Therefore, because Cargill has not pled setoff as an affirmative defense, its motion for summary judgment as to setoff is denied.

## CONCLUSION

For the foregoing reasons, Defendant Cargill's Motion for Summary Judgment [64-1] is GRANTED as to Counts I and II and DENIED as to Counts III and IV, while Plaintiff Oxford's Motion for Summary Judgment [70-1] is DENIED.

ENTER

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 10-28-02